**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CARL HANIF DUKES,

                                        Petitioner

                - v -                                        Civ. No. 9:02-CV-0455
                                                                    (LEK/RFT)

DANIEL A. SENKOWSKI,

                                        Respondent.

**APPEARANCES:**                                        **OF COUNSEL:**

CARL HANIF DUKES
Petitioner, *pro se*
99-A-0232
Elmira Correctional Facility
Box 500
Elmira, New York 14902-0500

**HON. ELIOT SPITZER**                                 **STEVEN H. SCHWARTZ , ESQ.**
Attorney General of the State of New York              Assistant Attorney General
Attorney for Respondent
Office of the Attorney General–Albany
State of New York
The Capitol
Albany, New York 12224-0341

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

        In 1998, Petitioner Carl Hanif Dukes was convicted of second degree murder, first degree

burglary, and first and second degree robbery.  Petitioner presently seeks a Writ of *Habeas Corpus*

pursuant to 28 U.S.C. § 2254.  Dkt. No. 1, Pet.  In support of his Petition, Dukes asserts that his

conviction should be vacated because:  (1) the trial court improperly allowed grand jury testimony to

be read into the record at Dukes' trial; (2) Dukes' oral and written admissions to the authorities,

introduced as evidence against him at trial, were obtained in violation of his Fifth Amendment right

against self-incrimination; and (3) the trial judge improperly allowed a prosecution witness to offer

hearsay evidence against Dukes.[1]  For the reasons that follow, this Court recommends that the

Petition be **denied**.

## I.  BACKGROUND

### A.  State Court Proceedings

According to the testimony adduced at trial, on Friday, September 5, 1997, Dukes called his

attorney, Bertrand Gould, Esq., a Deputy Public Defender for Albany County, New York, and

informed him that Dukes wished to speak with law enforcement agents about information he

possessed concerning a robbery in exchange for "some consideration" on an unrelated criminal

matter for which Dukes was represented by Attorney Gould.  *See* Transcript of Trial of Carl Haniff

Dukes (11/6/88) ("Trial Tr.") at pp. 597-600.  Dukes assured Attorney Gould he had "no personal

legal involvement" in the matter about which he was going to discuss with the police.  Trial Tr. at

pp. 615-16.  At Dukes' behest, the offer of information was communicated to the Albany Police

Department, and, on Monday, September 8, 1997, Attorney Gould and Dukes arrived at the Albany

County Courthouse so that Dukes could be interviewed by the police.  Trial Tr. at p. 528.

Upon arriving at the interview room of that courthouse, Dukes was advised by Detective

Ronald Matos of the Albany Police Department of his *Miranda* rights[2] in the presence of Detective

Kenneth Wilcox of the Albany Police Department as well as Attorney Gould.  *Id*. at p. 529.  At that

point, because Attorney Gould feared that Dukes might convey to the police information that might

subsequently cause a conflict of interest in light of Gould's job as an Assistant Public Defender,

---

[1] This matter has been referred to this Court for report and recommendation.  *See* 28 U.S.C. 28 U.S.C. § 636(b); N.D.N.Y.L.R. 72.3(c); *see also* FED. R. CIV. P. 72(b).

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Attorney Gould informed Petitioner that he would leave the interview room while Dukes was being questioned by the police, but that he would "be in the other room waiting to serve him" if Dukes needed Attorney Gould's assistance.  *Id*. at pp. 609-10.  Dukes then stated that he "did not have a problem with [Attorney Gould] remaining out of the room, unless or until he needed his services." *Id*. at p. 610.

After the interview had been under way for a period of time, Attorney Gould entered the room and asked Dukes whether

> everything was going as he expected or wanted it [sic] to go.  [Attorney Gould] asked
> [Dukes] if he was in any way in jeopardy, if there was anything that was going to reflect
> on him or toward him which would be a danger to him, legally speaking. . . . [Dukes]
> said it was not and he was doing fine.

*Id*. at p. 612.

Attorney Gould then reminded Dukes that he would remain outside the room and that Dukes "had every right to stop at anytime to ask to speak to [Attorney Gould], or to have [Attorney Gould] present, if [Dukes] thought that was necessary."  *Id*. at p. 612.  After approximately two more hours of questioning, there was another break in the interview during which Attorney Gould again entered the interview room.  *Id*. at p. 613.  At that time, he again reminded Dukes that he was "next door" if Dukes needed him.  *Id*. at pp. 613-14.

Sometime thereafter, Dukes informed Attorney Gould that he had "signed a confession of some sort against his own interests."  *Id*. at p. 603.  Specifically, during the course of his interview, Dukes provided the police with two written statements.  One statement discussed a burglary/robbery that had occurred in October 1996 at the residence of Erik Mitchell, while the second statement

related to the shooting death of Mitchell in February 1997.  *Id*. at pp. 479-85.[3]  In his first statement, Dukes admitted that in October 1996, he and two of his friends "did this robbery" concerning a home "around 200 Clinton Avenue."  *Id*. at p. 480.[4]  Dukes stated that in conjunction with that robbery, he served as a "look out" while his friends broke into the residence, robbed the people inside the home and left the crime scene with "some marijuana, some jewelry, and some money."  *Id*.  In his second statement, Dukes again acknowledged his complicity in the October 1996 burglary/robbery, and noted that subsequent to that incident, he had learned that Mitchell discovered the identities of the individuals who had robbed his home and that Mitchell wanted "real revenge."  *Id*. at p. 483.  Upon learning of Mitchell's intentions, Dukes and two of his friends agreed to go to Mitchell's home in February 1997 to "tell him to forget about all that."  *Id*. at p. 484.  When the three arrived at Mitchell's home, an argument ensued and, according to Dukes, a "gun came out" which was fired by one of Petitioner's friends.  *Id*.  Petitioner stated that after the gunshot, he "just took off."  *Id*.[5]  Dukes informed Detective Matos that after Petitioner came into possession of the gun used to shoot Mitchell, he disposed of it by throwing it into the Hudson River in Troy, New York.  *Id*. at p. 487.

The trial testimony also revealed that after Detective Wilcox reviewed Dukes' voluntary statements, he remarked to Petitioner that he appeared to be "the punk of the crew."  *Id*. at p. 535. Detective Wilcox testified that after he had referred to Dukes as a "punk" several times, Dukes

---

[3] On both of these signed statements, Dukes initialed the pre-printed material acknowledging that he was voluntarily making the statements to the police after being advised of his *Miranda* rights.  Trial Tr. at pp. 477-79 & 482-83; *see also* Nov. 1998 Decision at pp. 3-4.

[4] In October 1996, Erik Mitchell lived at 195 Clinton Avenue in Albany, New York.  Trial Tr. at p. 95.

[5] Mitchell subsequently died of the gunshot wound he had sustained to his head on February 18, 1997.  Trial Tr. at pp. 268 & 286.

became "very irate" and began yelling at Detective Wilcox.  *Id*.  Dukes then called Detective

Wilcox a liar and stated that Petitioner's friends "know [that] when things get hot and heated,

[Dukes is] the one that's going to do it, [Dukes is] the one that's going to pull the trigger."  *Id*. at p.

536.  Dukes then boasted that he was "the man, [he was] the mother-fucking man" while gesturing

with his hand in a manner indicating that he was holding a gun.  *Id*.

On October 28, 1997, Dukes was indicted by an Albany County grand jury and charged with

one count of first degree murder, two counts of second degree murder, first degree burglary, and

robbery in the first and second degrees.  *See* Indictment No. 97123 ("Indictment") (reproduced in

Record on Appeal at pp. R5-R10).  Dukes' jury trial on those charges commenced in Albany County

Court on November 6, 1998, with the Honorable Larry J. Rosen, Albany County Court Judge,

presiding.  At the conclusion of that trial, Dukes was acquitted of both the first and second degree

murder charges that alleged that Dukes intentionally killed Mitchell.  Trial Tr. at pp. 777-78.  Dukes

was convicted, however, of the second degree murder charge that accused him of killing Mitchell

under circumstances evincing a depraved indifference to human life.  *Id*. at p. 778.  The jury also

convicted Dukes of the first degree burglary charge and the first and second degree robbery charges.

*Id*. at pp. 779-80.  Thereafter, on January 5, 1999, Dukes was sentenced to an indeterminate term of

twenty-five years to life imprisonment on the murder conviction, a consecutive indeterminate term

of twelve and one-half to twenty-five years on the burglary conviction, and lesser, concurrent

sentences on the remaining convictions.  *See* Transcript of Sentencing of Carl Haniff Dukes (1/5/99)

at pp. 27-28.

Dukes appealed his convictions and sentences to the New York State Supreme Court,

Appellate Division, Third Department, alleging through counsel, *inter alia*, that:  (1) the trial court

erred in allowing the prosecutor to read portions of grand jury testimony into the record; (2) the reading of that grand jury testimony violated Dukes' Sixth Amendment right of confrontation; (3) Judge Rosen improperly allowed Dukes' oral and written statements to the authorities into evidence in violation of his Fifth Amendment rights; (4) Dukes' oral and written statements were procured by the police in violation of Dukes' Sixth Amendment right to counsel; and (5) the trial court erred by permitting the prosecution to elicit hearsay testimony from one of its witnesses. *See* Appellate Brief (6/12/00) ("App. Br.").

The Third Department affirmed the convictions and sentences in all respects. *People v. Dukes*, 717 N.Y.S.2d 720 (N.Y. App. Div., 3d Dep't 2000). Leave to appeal to the New York State Court of Appeals was subsequently denied by that court. *People v. Dukes*, 750 N.E.2d 79 (N.Y. 2001). Petitioner thereafter commenced this action on March 26, 2002.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a

State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## B.  Review of Dukes' Claims

### *1. Receipt of Grand Jury Testimony into Evidence*

In his first ground for relief, Dukes argues that the trial court erred when it allowed the prosecutor to read the grand jury testimony of Matthew Parsons into evidence at Dukes' trial.  Pet., Ground One.  In his second ground, Petitioner contends that the improper reading of that testimony into evidence "caused the jury to convict [Dukes] of depraved indifference murder."  Pet., Ground Two.  Petitioner expands upon this latter claim in his Traverse, arguing that the admission of the grand jury testimony violated his right under the Sixth Amendment of the United States Constitution to confront his accusers.  *See* Dkt. No. 11, Traverse at p. 2.

In *Chapman v. California*, 386 U.S. 18 (1967), the Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  386 U.S. at 24.  In making that determination, the reviewing court is to consider "'whether there is a reasonable possibility that the evidence

complained of might have contributed to the conviction.'"  *Id.* (quoting *Fahy v. State of Connecticut*, 375 U.S. 85, 86-87 (1963)).  Additionally, the Confrontation Clause of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. Const. amend. VI; *see Kentucky v. Stincer*, 482 U.S. 730, 736 (1987).  This right prevents the Government from introducing into evidence at trial accusations against the defendant unless the accuser both testifies at trial and is available for cross-examination.  *See Bruton v. United States*, 391 U.S. 123, 128 (1968); *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987).

Parsons was a prosecution witness at Dukes' trial.  When Parsons testified that he did not recall certain aspects of the crimes about which he had previously testified before a grand jury, the trial court allowed the prosecutor to read into evidence portions of Parsons' grand jury testimony at Dukes' trial.  Trial Tr. at pp. 312-27.   On appeal, the Third Department stated that the trial court erred in allowing the prosecution to use Parsons' grand jury testimony for the purpose of impeaching that witness' trial testimony.  *Dukes*, 717 N.Y.S.2d at 722.  However, in finding that error nonetheless harmless, the Appellate Division observed that the record established that Dukes had "made any number of admissions to law enforcement officials, as well as lay persons, demonstrating that he had killed a person, and the evidence was such that it clearly was inferable that the person killed was Mitchell."  *Id.* (footnote omitted).

In *Gutierrez v. McGinnis*, 389 F.3d 300 (2d Cir. 2004), the Second Circuit held that when considering a claim in a federal *habeas* petition challenging an appellate court's finding of harmless error, the *habeas* court is to determine whether the appellate court's decision was an objectively reasonable application of *Chapman*.  *Gutierrez*, 389 F.3d at 306.  Thus, this Court must determine

whether the Third Department's finding of harmless error is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.

In his appeal, Dukes primarily argued that the use of Parsons' grand jury testimony was erroneous because its admission violated New York's Criminal Procedure Law ("CPL") § 60.35.[6] *See* App. Br. at pp. 24-30.  In the present proceeding, Petitioner does not clearly allege whether his claim is based upon the prosecution's alleged violation of CPL § 60.35.  Rather, he merely alleges that "County Court erred" in allowing the prosecution to read Parsons' grand jury testimony into the record.  *See* Pet., Ground One.

To the extent Petitioner relies upon CPL § 60.35 as a basis for the relief he seeks herein, the Court notes that federal *habeas* relief is unavailable for mere violations of state evidentiary rules. *Arthur v. Beaver*, 2004 WL 2287773, at *4 (E.D.N.Y. Oct. 8, 2004) (federal *habeas* relief unavailable for alleged violation of CPL § 60.35).  Rather, state court evidentiary rulings that erroneously admit evidence against a defendant are "only redressable in a federal habeas corpus proceeding if there is a showing that the particular errors were of constitutional magnitude." *Hunter v. Greiner*, 2000 WL 245864, at *4 (S.D.N.Y. Mar. 3, 2000) (citing *Benitez v. Senkowski*, 1998 WL 668079, at *7 (S.D.N.Y. Sept. 17, 1998)).  "Evidentiary errors must be so pervasive as to have denied [petitioner] a fundamentally fair trial." *Hunter v. Greiner*, 2000 WL 245864, at * 4 (quoting *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985)).  The Second Circuit has observed that a federal

---

[6] CPL § 60.35, entitled "Rules of evidence; impeachment of own witness by proof of prior contradictory statement," provides, in part:

> When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony.

N.Y. CRIM. PROC. LAW § 60.35[1].

court cannot grant *habeas* relief unless the disputed evidence "viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.  In short it must have been 'crucial, critical, [and] highly significant.'"  *Collins v. Scully*, 755 F.2d at 19 (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982)); *see Johnson* v. Ross, 955 F.2d 178, 181 (2d Cir. 1992); *Rios v. Hoke*, 1988 WL 101013, at *3 (N.D.N.Y. Sept. 19, 1988) (citing *Collins* and *Nettles*).

After reviewing the evidence presented against Dukes at his criminal trial, this Court concludes that his conviction on the second degree murder charge was certain even if Parsons' grand jury testimony had not been read into the record at Petitioner's trial.  Specifically, the record reveals that Dukes made numerous admissions to a variety of people about having killed an individual whom the jury could have reasonably concluded was Mitchell.  For example, in the Spring of 1997, Dukes admitted to a fellow pre-trial detainee at the Albany County Correctional Facility that Petitioner had shot in the head a student of the State University of New York ("SUNY") at Albany in the Arbor Hill section of Albany.  *See* Trial Tr. at p. 400.[7]  Later that same year, during a card game at that same facility, Petitioner boasted to another pre-trial detainee that Dukes was not intimidated by the other detainees because Petitioner had already "got[ten] a body," which that individual understood to mean that Dukes had killed someone.  *Id*. at pp. 419-22. Additionally, on the evening of April 8, 1998, while Dukes was being transported to a court appearance, he expressed his displeasure at being charged with another crime by shouting " I killed

---

[7] At the time of the shooting, Mitchell was a SUNY Albany student who lived in the Arbor Hill section of Albany.  Trial Tr. at pp. 89-90.

one person, these people kill all the . . . niggers and get away with it, and I killed one and I don't." *Id*. at p. 580.

The above evidence, particularly when viewed in combination with Dukes' admissions to law enforcement agents that he was involved in the homicide of Mitchell, *see* Trial Tr. at pp. 479-85, 535-36, establish that there is no reasonable possibility that the erroneous admission of Parsons' grand jury testimony might have contributed to Dukes' conviction on the depraved indifference murder charge.

Viewing Petitioner's challenge to the admission of grand jury testimony as one alleging a violation of Dukes' rights under the Confrontation Clause, the Court notes that "the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." *Pennsylvania v. Ritchie*, 480 U.S. at 52-53 (citation omitted).  The record reflects that defense counsel cross-examined Parsons about his grand jury and trial testimony.  *See* Trial Tr. at pp. 328-33.  Since the prosecution only objected to one of the questions posed to Parsons during his cross-examination,[8] and Dukes' counsel thoroughly questioned that witness at Petitioner's trial, any Confrontation Clause claim must fail.  *See Ritchie*, 480 U.S. at 52-53; *United States v. Finkielstain*, 718 F. Supp. 1187, 1192 (S.D.N.Y. 1989) (citing *Ritchie*).

Based upon the foregoing, this Court recommends that Dukes' first and second grounds for relief, both of which are based upon the admission of Parsons' grand jury testimony at Petitioner's criminal trial, be **denied**.

### 2.  Admission of Dukes' Statements into Evidence

In his third ground for relief, Dukes argues that law enforcement agents never informed

---

[8] The trial court overruled that objection.  Trial Tr. at p. 332.

Attorney Gould that his client was a suspect in a homicide at the time Dukes agreed to speak with

the police.  Pet., Ground Three.  Petitioner argues that the failure of the authorities to inform

Attorney Gould of that fact establishes that "the police affirmatively misled Attorney Gould into

thinking that [Dukes] could safely waive his right to refuse to talk to [the] police."  *Id*.

> The Supreme Court has stated that, in accordance with *Miranda*,
>
> a person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

*Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444).

In considering whether a party has voluntarily provided a statement to the police, courts are to

consider the "totality of the circumstances," including, evidence of police coercion, the length of the

interrogation, the defendant's maturity and education, and whether the police failed to advise the

defendant of his rights to both remain silent and to have counsel present during the custodial

interrogation.  *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993); *see also Colorado v. Spring*, 479

U.S. 564, 573 (1987).[9]  In determining whether a statement was coerced, a court must examine

"whether a defendant's will was overborne" by the circumstances surrounding the giving of a

confession[,] . . . tak[ing] into consideration 'the totality of all the surrounding circumstances – both

the characteristics of the accused and the details of the interrogation.'"  *Dickerson v. United States*,

530 U.S. 428, 434 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).  *Miranda* also

stands for the proposition that any statements given to law enforcement agents that have been

---

[9] A coerced or otherwise involuntary statement may never be used for any purpose.  *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) (*[A]ny* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law . . . ." (emphasis in original)).

*-12-*

induced by trickery or deception are inadmissible at trial. *Berkemer v. McCarty*, 468 U.S. 420, 433 (1984) (citing *Miranda*); *see also Moran v. Burbine*, 475 U.S. 412, 421 (1986).

In conjunction with this claim, this Court has reviewed the portions of the transcript of the suppression hearing conducted by Judge Rosen,[10] together with that court's November 1998 Decision denying Dukes' suppression motion. Based upon that review, this Court concurs with the findings of the state courts that Dukes' statements were properly used as evidence against him at his trial. Specifically, the record reveals that, on September 8, 1997, when Attorney Gould appeared with Dukes at the Albany County Courthouse, Dukes was informed by Detective Sergeant Kevin Breen of the Albany Police Department that the police wished to question Dukes about the Mitchell homicide that had occurred on Clinton Avenue. Suppression Tr. at pp. 34 & 38-39. Attorney Gould then informed Petitioner that he would not be present when he was being questioned by the police, after which Dukes agreed to waive his right to have counsel present during the questioning. *Id.*; *see also* Nov. 1998 Decision at p. 3. Dukes was thereafter informed of his *Miranda* rights, which he understood and agreed to waive. Nov. 1998 Decision at p. 3. Petitioner thereafter signed two incriminating statements, the first implicated him in the October 1996 burglary/robbery, and the second implicated him in the shooting death of Mitchell. *Id.* at pp. 3-4.

Considering first Petitioner's claim that the police "misled" Attorney Gould about the nature of the questioning to which they intended to subject Dukes, Petitioner has not cited, and this Court could not find, any record support for this claim. Nor is there any evidence which indicates that any "deliberately coercive or improper tactics" were employed by the police in order to obtain Dukes'

---

[10] This Court was not provided with a complete copy of the suppression transcript, but rather the portions of that transcript that were reproduced in the Appendix to Dukes' Appellate Brief. *See* Appellant's Appendix at pp. A36-92. This Court will cite that document in this Report-Recommendation as "Suppression Tr."

statements.  *See Oregon v. Elstad*, 470 U.S. 298, 314 (1985).  To the contrary, the record establishes

that Dukes voluntarily provided law enforcement agents with his statements.  In light of the above,

this Court concludes that Petitioner has failed to establish this aspect of his claim.  *See United States*

*v. Mitchell*, 966 F.2d 92, 100 (2d Cir. 1992) ("To prevail on a claim of trickery and deception [a

petitioner] must produce clear and convincing evidence that [law enforcement] agents affirmatively

misled [him] as to the true nature of [the] investigation.") (internal quotation and citation omitted));

*see also United States v. Patterson*, 2002 WL 31890950, at *6 (S.D.N.Y. Dec. 27, 2002) (citations

omitted).

      In addition to finding that Petitioner's statements were not the result of coercive tactics on

the part of law enforcement agents, the Court finds that the other *Withrow* factors similarly support a

finding that Petitioner's incriminating statements were properly admitted into evidence against him

as the product of a knowing and voluntary waiver of Petitioner's *Miranda* rights.  In this regard, the

Court notes that the length of the questioning was relatively brief, Dukes voluntarily entered the

police station at approximately 9:00 a.m. with Attorney Gould, and Petitioner provided his

voluntary statements about the burglary/robbery and the February 1997 homicide on that same day

at approximately 3:00 p.m.  Suppression Tr. at p. 34 & 125.  Periodic breaks in the questioning

occurred throughout that day, during which Dukes was afforded the opportunity to speak with

Attorney Gould.  *Id*. at pp. 124-25.  Additionally, Dukes was necessarily aware of his right to

counsel due to his familiarity with the legal system – he was already represented by Attorney Gould

on an unrelated criminal charge when he contacted his attorney and indicated his desire to speak

with law enforcement agents about the burglary/robbery.  Trial Tr. at pp. 597-600.  Furthermore,

the record firmly establishes that Dukes voluntarily waived his right to have Attorney Gould present

during the questioning and that Dukes signed both of his written statements to the police after

knowingly and voluntarily waiving his *Miranda* rights.  Suppression Tr. at pp. 61-65, 73-74, & 121;

*see also* Nov. 1998 Decision at p. 3.

Under the AEDPA, a state court's factual findings at a suppression hearing are presumed to

be correct, and the petitioner has the burden of overcoming that presumption by clear and

convincing evidence.  *See Sorto v. Herbert*, 2004 WL 2852358, at *2  (E.D.N.Y. Dec. 13, 2004)

(citing 28 U.S.C. § 2254(e)(1)); *James v. Walker*, 2003 WL 22952861, at *6 (E.D.N.Y. Aug. 28,

2003), *aff'd*, 2004 WL 2496742, at *6 (2d Cir. 2004) (unpublished opinion).[11]  After considering the

totality of circumstances relating to the manner in which Dukes' incriminating statements were

obtained, this Court finds that the conditions surrounding the interrogation, the conduct of law

enforcement agents during their interview with Dukes, and Petitioner's actions throughout that

period of time amply support the state courts' findings that Dukes voluntarily waived his right to

have counsel present during the questioning and thereafter voluntarily provided the incriminating

statements to the authorities.  *See* Nov. 1998 Decision at pp. 5-6; *Dukes*, 717 N.Y.S.2d at 722.

Therefore, this Court recommends that the third ground in Dukes' Petition be **denied**.  *See Withrow*,

507 U.S. at 693-94; *Colorado v. Spring*, 479 U.S. at 573; *Parsad v. Greiner*, 337 F.3d 175, 183 (2d

Cir.), *cert. denied sub nom.*, *Parsad v. Fischer*, 540 U.S. 1091 (2003); *Hotchkiss v. Walsh*, 2004 WL

2721943, at *8 (S.D.N.Y. Nov. 29, 2004) (citations omitted).

### 3. Ineffective Assistance of Trial Counsel

In his fourth ground for relief, Dukes argues that when Attorney Gould met with the police

---

[11] However, "ultimately legal questions, such as whether a defendant has effectively waived his federal constitutional rights in a proceeding, are governed by federal standards." *Oyague v. Artuz*, 393 F.3d 99, 104 (2d Cir. 2004).

in September 1997, he never inquired of law enforcement agents whether Dukes was a suspect in the matter about which he was to be questioned by the police.  Pet., Ground Four.  Dukes argues that his counsel, in "allow[ing] the police to interrogate his client about an ongoing criminal investigation" without first ascertaining whether the authorities believed Dukes to be a suspect in the crimes, rendered ineffective assistance.  *Id*.  Petitioner also faults his counsel for failing to discuss with Dukes the substance of the information he intended to divulge to the authorities, arguing that "competent counsel would have ascertained from [Dukes], before any interrogation, precisely what he intended to tell [the] police."  *Id*.  Petitioner additionally contends that it was "inexcusable" for his attorney to permit Dukes to be questioned by law enforcement agents for hours merely because Attorney Gould feared that he may become privy to information that could result in a conflict of interest in light of Attorney Gould's capacity as an Assistant Public Defender. *Id*.

The Sixth Amendment to the United States Constitution provides in part that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const., amend. VI.  To establish a violation of this right to the effective assistance of counsel, a *habeas* petitioner must show both: 1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and, 2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (noting that "the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*).

In rejecting Dukes' appellate claim alleging ineffective assistance, the Appellate Division

held:

> To the extent that [Dukes] asserts that he was denied his right to effective assistance of counsel, we note only that counsel's assent to [Dukes'] interview with the police was predicated upon [Dukes'] lack of candor with his attorney with respect to the subject matter of the police inquiry.

*Dukes*, 717 N.Y.S.2d at 722 (citation omitted).

Since the rule set forth in *Strickland* is "clearly established Federal law, as determined by the Supreme Court," this Court must determine whether the Appellate Division's decision denying this aspect of Dukes' appeal is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny.  *See Williams v. Taylor*, 529 U.S. 362, 391 (2000).

The record establishes that Dukes contacted Attorney Gould and requested that he contact law enforcement agents and advise them that Dukes wished to speak about a criminal investigation involving a robbery.  Trial Tr. at pp. 600 & 604.  Attorney Gould thereafter contacted the District Attorney's office and reached a tentative agreement with that office by which Dukes would be sentenced to time served on an unrelated criminal charge if Dukes agreed to fully cooperate with law enforcement agents regarding the information he possessed about the robbery.  *Id*. at pp. 600 & 604.  Attorney Gould testified, however, that before he would have allowed Dukes to speak with employees of the District Attorney's office or the Albany Police Department, he would have first ensured that Dukes was not personally involved in the incident his client wished to discuss with the authorities.  *Id*. at pp. 607-08.  Since Petitioner assured Attorney Gould that he was not involved in the incident about which he was to speak with the authorities Attorney Gould was satisfied that his client had no "personal legal involvement" in that matter and accordingly agreed to allow Dukes to speak with the authorities.  *Id*. at pp. 608-09.

Although Petitioner correctly asserts that Attorney Gould did not inquire of the authorities

*-17-*

whether Dukes was a suspect in the matter about which he wished to discuss with the police,

Petitioner appears to overlook the fact that he had previously assured Attorney Gould that he was

not criminally involved in the matter he was to discuss with the police.  *Id*.  Thus, as the Appellate

Division sagely noted, Attorney Gould's decision to allow Dukes to speak with law enforcement

agents "was predicated upon [Dukes'] lack of candor with [Attorney Gould] with respect to the

subject matter of the police inquiry."  *Dukes*, 717 N.Y.S.2d at 722 (citation omitted).[12]

Attorney Gould's understandable belief that his client could not incriminate himself by

talking to the police about the Mitchell homicide, coupled with the favorable treatment Dukes was

to receive regarding the criminal matter for which Attorney Gould was representing Dukes if he

assisted law enforcement agents in their investigation regarding the robbery, establish that Attorney

Gould acted in an objectively reasonable manner in allowing Dukes to be questioned by the police.

Additionally, since Attorney Gould was an assistant public defender, he may well have been

subsequently directed to represent one or more of the individuals involved in the Mitchell homicide.

Thus, far from being "inexcusable," it was entirely appropriate for Attorney Gould to ensure that he

was not present when Dukes provided law enforcement agents with information about individuals

whom Attorney Gould might thereafter be called upon to represent, particularly since he had

informed his client that he "would not leave the premises, that [he] would be [present in the]

immediately adjacent . . . room in which [Dukes] was being questioned; that [Attorney Gould]

would be available to [Dukes] anytime for any consultation that he wanted."  Trial Tr. at p. 602.

Moreover, although Attorney Gould excused himself from the interview room, he nevertheless

---

[12] Moreover, since Dukes assured Attorney Gould that he was not personally involved in the matter he was
going to discuss with the police, it was not objectively unreasonable for Attorney Gould to refrain from ascertaining
precisely what Dukes intended to tell the police.

spoke with Dukes on two occasions while he was being questioned to ensure that he was aware that he could request Attorney Gould's assistance at anytime during that interview. *Id*. at pp. 610-14.

Based upon the foregoing, the Court concludes that Attorney Gould did not act in an objectively unreasonable manner in allowing Petitioner to be questioned by law enforcement agents without the benefit of counsel on September 8, 1997. Petitioner has therefore necessarily failed to establish that the Appellate Division's decision denying Dukes' appellate claim alleging ineffective assistance of counsel is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent. The Court therefore recommends that Dukes' fourth ground for relief be **denied**.

### 4. Admission of Hearsay Evidence

In his fifth and final ground, Dukes argues that the trial court erred when it allowed Detective Sbuttoni to offer hearsay evidence against Dukes during the prosecution's case-in-chief. Pet., Ground Five. Specifically, Dukes contends that his trial attorney did not "open the door" to that hearsay testimony, and that Detective Sbuttoni's testimony on re-direct examination exceeded the scope permissible in light of the questions asked of that witness by defense counsel on cross-examination. *Id*. Petitioner argues that the wrongful admission of that hearsay evidence "could have contributed to the verdict." *Id*.

Historically, when evaluating convictions in the face of collateral *habeas* challenges alleging error on the part of a trial court, *habeas* courts have inquired whether the trial court's error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

As noted above, in *Gutierrez*, the Second Circuit held that when considering a claim in a federal *habeas* petition based upon an appellate court's ***finding of harmless error***, the *habeas* court is to determine whether the appellate court's decision was an objectively reasonable application of *Chapman v. California*, 386 U.S. 18 (1967).  *See Gutierrez*, 389 F.3d at 306 (emphasis added).  The *Gutierrez* court explicitly noted, however, that it did not "reach the issue of whether or how to apply *Brecht* where the state court has not engaged in harmless error review . . . ."  *Id*.

In denying Dukes' direct appeal, the Appellate Division did ***not*** engage in a harmless error analysis relating to Dukes' claim that the trial court wrongfully allowed Detective Sbuttoni to offer incriminating hearsay evidence against Dukes.  Rather, that court denied Dukes' challenge to the admission of that evidence by generally stating it had "considered [Dukes'] remaining arguments and [found] them equally without merit."  *Dukes*, 717 N.Y.S.2d at 722.  Thus, the Second Circuit's holding in *Gutierrez* does not appear to be controlling with respect to the appropriate standard of review to apply to the Appellate Division's decision denying this aspect of Dukes' appeal.  *See Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005) (noting that "the question of what standard of review . . . should [be] appl[ied] in the wake of AEDPA when determining whether a non-structural trial error challenged on collateral review is harmless when the state courts do not themselves reach the harmlessness question" is an open question in this Circuit).

Although the Supreme Court has considered claims of trial court error on several occasions since the enactment of the AEDPA, that Court has never definitively ruled on the issue regarding the appropriate standard of review to be employed by district courts in considering such claims in the context of federal *habeas* petitions.  *See Penry v. Johnson*, 532 U.S. 782, 795 (2001); *Early v. Packer*, 537 U.S. 3, 10 (2002).  For example, in both *Penry* and *Early*, state inmates challenging

*-20-*

their respective convictions had filed *habeas* petitions pursuant to 28 U.S.C. § 2254.  The issue of

whether the *Brecht* standard survived the AEDPA was apparently not briefed by the parties in those

cases, and the Supreme Court never specifically indicated whether the *Brecht* standard is still

controlling in light of the AEDPA.[13]  In view of the Supreme Court's failure to definitively rule on

this issue, as well as the uncertainty within this Circuit concerning the standard of review to be

utilized in conjunction with a federal *habeas* claim alleging trial court error where the state court has

not engaged in harmless error review, this Court will examine the issue now raised by Petitioner

regarding admission of Detective Sbuttoni's testimony at trial utilizing both the *Brecht* and

*Chapman* standards.

The following colloquy occurred during the course of defense counsel's cross-examination

of Detective Sbuttoni:

| Defense Counsel: | Is it fair to say that the information which led to Pierre Lyons was taken from Mr. Parsons? |
| Det. Sbuttoni: | Yes, in part. |

*****

| Defense Counsel: | And you eventually interviewed Mr. Lyons regarding the burglary/robbery after Erik Mitchell had been found murdered; is that correct? |
| Det. Sbuttoni: | Yes. |
| Defense Counsel: | And at that time Mr. Lyons denied any involvement with Erik Mitchell's murder; is that correct? |
| Det. Sbuttoni: | I don't know that we got into it with him, the homicide portion, on that given date. |
| Defense Counsel: | But you did on a later date? |

---

[13] In a recent Supreme Court case, wherein the Court engaged in a direct review of the defendant's federal conviction in the United States District Court for the Central District of California, the Court noted in *dicta* that "[w]hen the Government has the burden of showing that constitutional trial error is harmless because it comes up on collateral review, the heightened interest in finality generally calls for the Government to meet the more lenient *Kotteakos* standard."  *United States v. Dominguez Benitez*, 542 U.S. 74 (2004) (citing *Brecht*, 507 U.S. at 638).  Thus, a fair reading of *Dominguez Benitez* could lead courts to conclude that the *Brecht* standard, which is rooted in the Supreme Court's decision in *Kotteakos*, may still be the controlling standard of review in federal *habeas* claims brought under § 2254 notwithstanding enactment of the AEDPA.

*-21-*

| | |
|---|---|
| Det. Sbuttoni: | Yes. |

Trial Tr. at pp. 220-21.

After the defense had concluded its cross-examination of that witness, the jury was excused

and the prosecution argued that, in its re-direct examination, it was entitled to explore Pierre Lyons'

statement to Detective Sbuttoni in which Lyons claimed that he was not involved in the Mitchell

homicide. *Id.* at pp. 224-28. The Court thereafter ruled that defense counsel had opened the door

for the prosecution to engage in limited re-direct examination of Detective Sbuttoni regarding that

statement. *Id.* p. 229. On re-direct examination, the following testimony was received into

evidence:

| | |
|---|---|
| Prosecutor: | Okay. Now let me ask you this: Do you recall [defense counsel] asking you whether or not when you spoke to Pierre Lyons on a later date he denied involvement in the murder of Erik Mitchell. Do you remember that? |
| Det. Sbuttoni: | Yes. |
| Prosecutor: | Now, in fact, you did speak with Pierre Lyons and you did interview him with respect to Erik Mitchell's murder, as you said, at a later date; is that correct? |
| Det. Sbuttoni: | Yes, that is correct. |
| | ***** |
| Prosecutor: | And tell the jury, if you would, please, what Pierre Lyons did admit to you as his – as far as any involvement in the incident precipitating Erik Mitchell's murder. |
| Det. Sbuttoni: | Pierre said that he had contact with Carl Dukes and La, and that Carl heard that somebody was snitching on him. |
| Defense Counsel: | Objection. |
| The Court: | Overruled. You can continue. |
| Det. Sbuttoni: | And that for this reason he wanted to go down and talk to Erik Mitchell, to get him to stop talking, so that he wouldn't pursue this matter. |
| Prosecutor: | And what, if anything, did Mr. Lyons indicate as to whether or not he did accompany Mr. Carl Dukes and La to Erik Mitchell's residence? |
| Det. Sbuttoni: | Pierre Lyons agreed to go with them. But when they got to the house, he says that Carl Dukes and La entered the apartment, that [Lyons remained] outside. They stepped down into the basement |

-22-

> apartment area and [Lyons] got – he decided not to go along with
> this at this time.  He supposedly kept walking.

*Id*. at pp. 230-31.

In New York, "where . . . the opposing party 'opens the door' on cross-examination to matters not touched upon during the direct examination, a party has the right on re-direct 'to explain, clarify and fully elicit [the] question only partially examined' on cross-examination." *Green v. Herbert*, 2002 WL 1587133, at *14 (S.D.N.Y. July 18, 2002) (quoting *People v. Melendez*, 434 N.E.2d 1324, 1327 (N.Y. 1982) (other citations omitted)).

Even assuming, *arguendo*, that the trial court erred in allowing that testimony into evidence, in light of the substantial evidence of Petitioner's guilt adduced at trial discussed more fully above, this Court concludes that any error in allowing that hearsay testimony into evidence was harmless beyond a reasonable doubt.  *See Chapman*, 386 U.S. at 24.  Alternatively, this Court concludes that the admission of that evidence did not have a substantial and injurious effect or influence in determining the jury's verdict at Petitioner's trial.  Accordingly, the Court recommends  Petitioner's fifth ground for relief be **denied**.

**WHEREFORE**, based upon the above, it is hereby

**RECOMMENDED**, that Dukes' *Habeas* Petition be **DENIED and DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties by regular mail.

**NOTICE**:  pursuant to 28 U.S.C. § 636(b)(1), the parties have **TEN (10) DAYS** in which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the Clerk.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

FED. R. CIV. P. 6(a), 6(e) & 72.

Date:   May 25, 2005
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge